UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERRY SMITH, 98-A-3744,

Plaintiff,

DECISION AND ORDER
06-CV-6320 CJS

-v-

EMILIA RUTIGLIANO, M.D.,

Defendant.

_____

APPEARANCES

For Plaintiff:          Terry Smith, *pro se*
                        98-A-3744
                        Attica Correctional Facility
                        639 Exchange Street
                        Attica, New York 14011-0149


For Defendants:         Benjamin Bruce, Esq.
                        Assistant Attorney General
                        Office of the New York State Attorney General
                        144 Exchange Boulevard, Suite 200
                        Rochester, New York 14614


INTRODUCTION

This is an action in which the Plaintiff, a prison inmate in the custody of the New

York State Department of Correctional Services ("DOCS"), is suing pursuant to 42

U.S.C. § 1983, alleging that Defendant violated his Eighth Amendment rights by

denying him appropriate medical care.  Now before the Court is Defendant's motion for

summary judgment [#11].  For the reasons that follow, the application is granted.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case

viewed in the light most favorable to Plaintiff.  At all relevant times Plaintiff was an

inmate at Attica Correctional Facility ("Attica") and Defendant Emilia Rutigliano, M.D.

("Defendant") was a physician employed at Attica.  Prior to March 2006, Plaintiff had

been prescribed Seroquel, 200 mg, as a sleep aid.  However, in March 2006 Rutigliano

discontinued the medication.[1]  Subsequently, Plaintiff alleges that he suffered night

sweats, chills, headaches and an upset stomach, which he attributes to withdrawal from

Seroquel.  Notably absent from Plaintiff's papers is any allegation concerning the

duration of his withdrawal symptoms.  Plaintiff claims that he sent letters to "Mental

Health" concerning his symptoms, but did not receive a response.  Plaintiff has not

submitted copies of any such letters, nor has he described their contents except to

state that they related to withdrawal symptoms.  The gist of Plaintiff's claim is that the

medication should have been discontinued gradually, rather than stopped "cold turkey."

In support of this view, Plaintiff states:

> It would be common sense that 200 mg is a very high dose of this
> medication. . . .  It would be common sense that if a [patient] was on this
> medication for almost 6 years and stop[ped] taking this medication
> suddenly and not reduced slowly there would be serious withdrawals from
> this medication.

(Plaintiff's Affidavit [#18] ¶ ¶ 10, 13).

In arguing for summary judgment, Defendant states that it was appropriate to

discontinue Seroquel, since "Seroquel is a neurolepic medication and is not approved

by the FDA as a sleep aid and was prescribed for 'off-label' use for insomnia since

drowsiness is a side effect of the medication." (Rutigliano Affidavit [#12], Ex. A).

---

[1]Defendant states that she discontinued the medication in June 2006.

Moreover, Defendant denies that Plaintiff complained of withdrawal symptoms to her or to the staff of the Office of Mental Health. Defendant further states that the symptoms alleged by Plaintiff would not have been caused by discontinuing the Seroquel: "The symptoms described by plaintiff were not caused from ceasing Seroquel because the prescribed dosage, 200 mg, was well below the therapeutic level." *Id*. Defendant also states that, although Plaintiff claims that he suffered headaches as a result of withdrawal, he had been suffering from a chronic headache condition. *Id*. Finally, Defendant states that "[t]here is no standard for the discontinuance of Seroquel when it is taken at low levels below the therapeutic level. Any discomfort from discontinuance of such a low dose would be expected to be extremely rare and minor." *Id*.

## ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to

support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).[2]

---

[2]Plaintiff was served with an <u>Irby</u> notice. *See*, Docket [#25].

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Plaintiff alleges that Defendant violated his Eighth Amendment rights in connection with his medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in

prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Applying all of the foregoing applicable legal principles, the Court finds that Defendant is entitled to summary judgment.  Plaintiff has not shown that his medical condition was sufficiently serious to support a claim of medical deliberate indifference. Moreover, even if his condition was sufficiently serious, he has not shown that Defendant acted with deliberate indifference.  In that regard, Plaintiff cannot show that Defendant was personally made aware of his complaints.  In any event, the record indicates that at most, Defendant was negligent.  However, negligence is insufficient to establish a claim of deliberate indifference to a serious medical need.

CONCLUSION

Accordingly, Defendant's summary judgment motion [#11] is granted, and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
　　　December 3, 2008

　　　　　　　　　　　　　ENTER:


　　　　　　　　　　　　　 /s/ Charles J. Siragusa

　　　　　　　　　　　　　CHARLES J. SIRAGUSA
　　　　　　　　　　　　　United States District Judge